UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

CRC INSURANCE SERVICES, INC.,

            Plaintiff,

    -against-                            **OPINION & ORDER**
                                              CV-08-3865 (SJF)(AKT)

LAMERE ASSOCIATES, INC.,

            Defendant.
----------------------------------------X
FEUERSTEIN, J.

On September 22, 2008, plaintiff CRC Insurance Services, Inc. ("plaintiff") commenced this action against defendant LaMere Associates, Inc. ("defendant"), pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, alleging claims for breach of contract, account stated and breach of fiduciary duty. Plaintiff now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on its claims for breach of contract and account stated. Defendant has not opposed the motion. For the reasons set forth herein, plaintiff's motion is granted.

I.    BACKGROUND

    A.    Factual Background[1]

Plaintiff is an Alabama corporation with its principal place of business in Birmingham, Alabama. (Complaint [Compl.], ¶ 4). Plaintiff "is a licensed wholesale surplus lines insurance

---

[1] The facts are derived from plaintiff's statement of material facts pursuant to Local Rule 56.1 and the accompanying declarations and other evidentiary material filed in support of plaintiff's motion for summary judgment.

1

broker that places a wide variety of specialized risks throughout the surplus lines market * * *[,] [which] consists of insurers willing to insure certain specialized property and casualty risks." (Affidavit of Kevin Shelton dated December 18, 2008 [Shelton Aff.], ¶ 2). According to Mr. Shelton, an accounting operations manager for plaintiff, "[o]nly licensed surplus lines brokers such as [plaintiff] may place risks in the surplus lines market" and "[a]s a wholesale broker, [plaintiff] deals exclusively with retail insurance brokers and does not deal directly with insurance buyers." (Shelton Aff., ¶ 2).

Defendant is a New York corporation with its principal place of business in Jericho, New York. (Compl., ¶ 5; Answer [Ans.], ¶ 1). Defendant is engaged in the retail insurance brokerage business and, at all relevant times, was a licensed insurance agent in the State of New York. (Compl., ¶¶ 5, 42; Ans., ¶ 1). As a retail insurance broker, defendant "deals directly with the insurance buyer, which is [defendant's] client." (Shelton Aff., ¶ 4).

In August 2002, the parties entered into a "CRC Brokerage Agreement" (the "Agreement"), (Compl., ¶¶ 8-9; Ans., ¶ 1; Shelton Aff., ¶ 3), pursuant to which plaintiff operated as a wholesale insurance broker and defendant operated as a retail insurance broker which procured certain insurance coverages on behalf of various insureds. (Compl., ¶ 11; Agreement). According to Mr. Shelton, since defendant "is not licensed to place risks in the surplus line market * * * [it] therefore entered into the [Agreement] whereby it could access the surplus lines market for its clients via [plaintiff]." (Shelton Aff., ¶ 4).

The Agreement provides, in pertinent part, as follows:

> [Defendant] guarantees the full payment due [plaintiff] of all premiums including deposit, earned, extension and adjustable premiums, fees, plus applicable state and local taxes, less commission, on every insurance contract bound or written for

2

[defendant] pursuant to this Agreement. *[Defendant] shall be liable to [plaintiff] for the payment of all premiums, fees and taxes whether or not collected by [defendant].* [Plaintiff] shall allow [defendant], as commission, a percentage of the premium written at the rate agreed upon by [plaintiff] and [defendant] from time to time. [Plaintiff's] billings may take the form of binders, invoices or statements. The net balance will be due and payable as indicated on such billings and may vary based upon the credit terms of the issuing company. * * * *[Defendant's] obligation to make payment to [plaintiff] is not contingent upon the issuance of a policy.* * * *."

(Shelton Aff., Ex. A [Agreement], p. 2) (emphasis in original).

Pursuant to the Agreement, plaintiff "quoted surplus lines risks for [defendant's] clients at [defendant's] request and bound surplus lines risks on [defendant's] instructions." (Shelton Aff., ¶ 5, Ex. A). According to Mr. Shelton, "[w]hen instructed by [defendant] to advise a surplus line insurer to bind a risk and issue a policy, [plaintiff] did so and invoiced [defendant] for the policy premium, related surplus lines tax, and fees pursuant to the [Agreement]." (Shelton Aff., ¶ 5).

Plaintiff alleges that "[a]s is standard business practice in the insurance brokerage industry, [plaintiff], as the wholesale broker, [was] independently obligated to remit to the respective insurance carriers the amount of premiums, taxes and fees, minus commissions, which were paid by the several insureds to [defendant] pursuant to the Agreement, regardless of whether [defendant] fulfill[ed] its obligations in remitting [those] funds to [plaintiff]." (Compl., ¶¶ 15, 22).

Pursuant to the Agreement, defendant placed, through plaintiff, two (2) insurance policies for The Hudson Companies Inc. ("Hudson") and two (2) insurance policies for Dunn Development Corporation ("Dunn"). (Shelton Aff., ¶ 7, Exs. B and R-S). Also pursuant to the Agreement, plaintiff sent defendant two (2) invoices, both dated March 19, 2008, in the total

amount of one hundred fifty-five thousand seven hundred seventy dollars ($155,770.00) for the premiums, fees and taxes that defendant collected from Hudson, minus defendant's commissions. (Shelton Aff., ¶¶ 8-10, Ex. C). E-mails from Eva L. LaMere, from defendant, confirm defendant's receipt of those invoices. (Shelton Aff., Exhibits D-N). Defendant failed to remit any portion of the amount due and owing on those two (2) invoices, notwithstanding that it had received all of the premiums on the Hudson policies from the insured and failed to object to any portion of the invoices. (Shelton Aff., ¶¶ 11-26, Exs. O-P).

Between June 29, 2008 and July 21, 2008, plaintiff also sent defendant three (3) invoices, in the total amount of one hundred eight thousand eight hundred seventy dollars ($108,870.00) for the premiums, fees and taxes, minus commissions, that defendant collected from Dunn. (Shelton Aff., ¶¶ 27-30; Ex. Q and T). Defendant failed to remit any portion of the amount due and owing on those three (3) invoices, notwithstanding that it had received all of the premiums on the Dunn policies from the insured and failed to object to any portion of the invoices. (Shelton Aff., ¶¶ 31-36, Ex. U).

According to plaintiff, defendant's failure to remit any of the amount invoiced to plaintiff has prevented plaintiff from remitting the premiums owed under the Hudson and Dunn insurance policies to the respective insurance carriers who issued those policies, as a result of which plaintiff has paid one hundred fifty-five thousand seven hundred seventy dollars ($155,770.00), less commissions, on the Hudson policies, and is required to pay one hundred eight thousand eight hundred seventy dollars ($108,870.00) on the Dunn policies. (Compl., ¶¶ 23, 24; Shelton Aff., ¶¶ 37-38, Exs. V and W).

B. Procedural History

On September 22, 2008, plaintiff commenced this action against defendant, pursuant to this Courts diversity jurisdiction under 28 U.S.C. § 1332, alleging claims for breach of contract (Count I), account stated (Count II), and breach of fiduciary duty (Count III). Plaintiff seeks damages in the amount of two hundred sixty-four thousand six hundred forty dollars ($264,640.00)[2], as well as prejudgment interest, costs and disbursements of the action and attorney's fees.[3]

Plaintiff now moves for summary judgment on its breach of contract and account stated claims. Defendant has not opposed the motion.[4]

II. DISCUSSION

A. Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[2] Although the complaint seeks damages in the amount of two hundred seventy-seven thousand six hundred twenty-three dollars and thirty-five cents ($277,623.35), the total amount of the debt owed to plaintiff by defendant is two hundred sixty-four thousand six hundred forty dollars ($264,640.00) and this is the amount plaintiff seeks in its motion.

[3] The Agreement provides, in pertinent part, that "[i]n the event [plaintiff] shall have to bring any action or proceeding to enforce collection of any amount due under the terms of this agreement, [defendant] agrees to pay all costs incident thereto, including reasonable attorney's fees, incurred by reason of such action or proceeding." (Agreement, p. 2).

[4] By order entered January 27, 2009, defense counsel's application to withdraw as counsel was granted and defendant, as a corporate entity, was directed to obtain new counsel on or before February 23, 2009. To date, no attorney has filed a notice of appearance on behalf of defendant and defendant has not otherwise taken any action in this case since that time.

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it 'might affect the outcome of the suit under governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the district court determines that there is a dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Spinelli, 579 F.3d at 166 (internal quotations and citation omitted), to determine whether there is a genuine issue for trial. See Ricci, 129 S.Ct. at 2677. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to "come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." Spinelli, 579 F.3d at 166 (internal quotations and citation omitted). Thus, the nonmoving party can only defeat summary

judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. Id. (internal quotations and citations omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Even where, as here, "a non-moving party fails to respond to a motion for summary judgment, a court 'may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109-110 (2d Cir. 2006) (quoting Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks and citations omitted)). "Even unopposed motions for summary judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Vermont Teddy Bear Co., 373 F.3d at 244).

B.  Breach of Contract Claim

In order to establish a breach of contract claim under Alabama law[5], the plaintiff must show: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages."

---

[5] The Agreement provides that it "shall be governed by, and construed and enforced in accordance with the laws of the State of Alabama." (Agreement, p. 5). Thus, it is undisputed that Alabama law applies to plaintiff's substantive claims.

7

Beauchamp v. Coastal Boat Storage, LLC, 4 So.3d 443, 450 (Ala. 2008) (quoting State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999)).

The undisputed facts in this case indicate: (1) the existence of a valid contract, i.e., the Agreement, binding the parties; (2) that plaintiff performed its obligations under the contract, i.e., at defendant's request, plaintiff advised surplus line insurer Colony Insurance Company to bind risks and issue policies to Hudson and Dunn, and surplus line insurer Mt Hawley Insurance Company to bind a risk and issue a policy to Dunn; (3) that defendant failed to perform its obligations under the Agreement, i.e., it failed to remit payment to plaintiff of all premiums, taxes, etc., less commission, on those insurance policies issued to Hudson and Dunn; and (4) that plaintiff sustained damages as a result of defendant's breach of the Agreement, i.e., plaintiff paid, or remains liable to pay, the premiums, taxes, etc. on the Hudson and Dunn policies from its own funds. Thus, plaintiff has met its burden of establishing that no material issue of fact remains on its breach of contract claim requiring a trial. Since defendant has failed to come forth with any evidence "sufficient to allow a reasonable jury to find in [its] favor," Spinelli, 579 F.3d at 166 (internal quotations and citation omitted), on the breach of contract claim, plaintiff is entitled to judgment as a matter of law on this claim.

C. Account Stated Claim

Under Alabama law, "an account stated * * * is an agreement between parties who have had a previous transaction or transactions of a monetary character that the item or items of account representing such transaction or transactions and the balance struck are correct, together with a promise, express or implied, for the payment of such balance." Rutledge Industrial Corp.

8

v. Talladega Foundry and Machine Co., Inc., 582 So.2d 436, 437 (Ala. 1991) (quoting Martin v. Stoltenborg, 273 Ala. 456, 458, 142 So.2d 257, 259 (1962)); see also Car Center, Inc. v. Home Indemnity Co., Inc., 519 So.2d 1319, 1322-1323 (Ala. 1988) (an account stated "is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount." (quoting University of South Alabama v. Bracy, 466 So.2d 148, 150 (Ala.Civ.App. 1985)). "A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and *rendered to the debtor*; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability." Car Center, 519 So.2d at 1323 (quoting Bracy, 466 So.2d at 150) (emphasis in original).

"An account is 'rendered' when it is presented." Rutledge, 582 So.2d at 437. "[A] rendering of the statement of account [] requires a factual showing that there was a proper mailing or evidence supporting a finding of mailing in due course." Car Center, 519 So.2d at 1323.

"An account stated also requires an express or implied agreement to pay the bill (statement of account)." Car Center, 519 So.2d at 1323. "An account rendered, and not objected to within a reasonable time becomes an account stated, and the failure to object will be regarded as an admission of the correctness of the account." Rutledge, 582 So.2d at 437 (quoting Home Federal Savings & Loan Association v. Williams, 276 Ala. 37, 158 So.2d 678 (1963)); see also Car Center, 519 So.2d at 1323 (holding that an implied agreement to pay the statement of account "can arise only where there has been a showing that the bill was rendered and the recipient of the bill failed to object within a reasonable time.")

The undisputed facts show that plaintiff rendered the five (5) invoices at issue in this case to defendant. In fact, defendant received and actually responded to the Hudson invoices without objection. Defendant also failed to object to the Dunn invoices. Accordingly, plaintiff has met its burden of establishing that no material issue of fact remains on its account stated claim requiring a trial. Since defendant has failed to come forth with any evidence "sufficient to allow a reasonable jury to find in [its] favor," Spinelli, 579 F.3d at 166 (internal quotations and citation omitted), on the account stated claim, plaintiff is entitled to judgment as a matter of law on this claim.

D. Prejudgment Interest[6]

Under Alabama law, prejudgment interest is recoverable on a breach of contract claim if the damages were reasonably certain at the time of the breach. Goolesby v. Koch Farms, 955 So.2d 422, 429 (Ala. 2006). Section 8-8-8, Ala. Code 1975, provides:

> "All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."

Since the damages sustained by plaintiff were reasonably certain at the time of

---

[6] Since the Agreement does not provide for an award of prejudgment interest, I must look to choice of law principles to ascertain whether Alabama or New York law governs an award of prejudgment interest. As this Court's jurisdiction is based on diversity, I must apply New York choice of law rules. See Schwartz v. Liberty Mutual Ins. Co., 539 F.3d 135, 147 (2d Cir. 2008) (holding that a district court sitting in diversity must apply the choice of law rules of the forum state in which it sits). "[U]nder New York choice of law principles, the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim." Id. (alterations in original). Accordingly, Alabama law governs any award of prejudgment interest.

10

defendant's breach, plaintiff is entitled to prejudgment interest on its breach of contract claim under Alabama law.

Section 8-8-1, Ala. Code 1975, provides, in pertinent part:

> "Except as otherwise provided by law, the maximum rate of interest upon the loan or forbearance of money, goods, or things in action, except by written contract is $6 upon $100 for one year * * *."

Accordingly, where, as here, the written contract does not set the applicable interest rate, the legal rate of prejudgment interest is six percent (6%) per annum. Burgess Mining and Construction Corp. v. Lees, 440 So.2d 321, 337 (Ala. 1983). Therefore, plaintiff is entitled to prejudgment interest at a rate of six percent (6%) per annum, commencing from the date its breach of contract cause of action accrued, i.e., the respective dates on which payment on the five (5) invoices was due, until the date of entry of this Order.

III. CONCLUSION

Plaintiff's motion for summary judgment is granted and plaintiff is granted judgment as a matter of law on its breach of contract and account stated claims in the total amount of two hundred sixty-four thousand six hundred forty dollars ($264,640.00), together with an award of prejudgment interest at a rate of six percent (6%) per annum. Plaintiff may serve and file an appropriate affidavit itemizing the amount of costs and attorney's fees it seeks to recover, together with a proposed judgment, including the amount of prejudgement interest in accordance with this Order, **within thirty (30) days** from the date this Order is served with notice of entry upon it. Failure of plaintiff to submit the affidavit and proposed judgment in accordance with this Order will be deemed a waiver of its right to costs, attorney's fees and prejudgment interest,

11

and judgment will be entered in the amount of the damages award alone.

Plaintiff must also inform the Court **within (30) days** from the date this Order is served with notice of entry upon it whether it seeks to proceed on its remaining breach of fiduciary duty claim, or that claim will be dismissed for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

The Clerk of the Court is directed to serve notice of entry of this Order in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* defendant at its last known address, see Fed. R. Civ. P. 5(b)(2)(C), as listed below.[7]

SO ORDERED.

United States District Judge

Dated: October 19, 2009
Central Islip, New York

Copies to:

London Fischer LLP
59 Maiden Lane
New York, New York 10038
Attn: Benjamin Lawrence Schiffman, Esq.

LaMere Associates, Inc.
300 Jericho Quadrangle, Suite 160
Jericho, New York 11753

LaMere Associates, Inc.
C/o Eva LaMere
7 Cathy Court
Glen Head, New York 11545

---

[7] The Clerk of the Court is also directed to update the docket sheet to reflect that the motion of Egan & Golden, LLP to withdraw as defense counsel was granted by order dated January 23, 2009.

12